We move to the fifth case this morning, Winston v. Clarke. Good morning, Your Honors. My name is Kristen McGabber, and I'm here today on behalf of the appellant, Mr. Michael Winston. May it please the Court. At the District Court, Judge Stadtmuller acknowledged a dispute of fact on the issue of administrative exhaustion. Ms. McGabber, before we get to the merits, let me ask you a quick jurisdictional question. The District Court judge dismissed the case without prejudice and mentioned that a couple of times in the course of his ruling. Does this Court have jurisdiction to hear it? Yes, Your Honor. This Court does have jurisdiction because this case is a final – the District Court's decision was a final decision under 28 U.S.C. 1291. Although this case was dismissed without prejudice, it's clear that there's nothing more Mr. Winston could do to allow this case to move forward. Could he still exhaust his claims through the process within the statute of limitations? No, Your Honor, because Mr. Winston is no longer an inmate at any facility. Therefore, Mr. Winston cannot go back and exhaust his administrative remedies because the grievance procedures are no longer available to him. Basically, what do you gain by an oral argument versus the conflicting – or the affidavits that have been submitted by the other side? Your Honor, nothing can replace live testimony. If a paybee hearing had been held in this case – Well, I understand what you're saying, but why is that? If a paybee hearing had been held in this case, Mr. Winston could have offered testimony from witnesses such as pod officers and cellmates who he testified helped him – He could have done that through the affidavit as well. I suppose so, Your Honor. He could have done so. However, at a hearing, Judge Stattmuller could have heard, based on the demeanor, the tone of voice, and the witness' ability to respond to evidence and questions, he could have heard and made a credibility determination based on that live testimony. The defendants would have also had the opportunity to present evidence. And more importantly, Mr. Winston would have had an opportunity to challenge the defendant's evidence. And what's clear here is the defendants failed to meet their burden to prove their affirmative defense of failure to exhaust administrative remedies. In order to establish their affirmative defense of failure to exhaust, the defendants were required to prove two things. One, the procedures Mr. Winston was required to follow. And two, that Mr. Winston failed to follow those procedures. The defendants failed to establish either of those things. As to the first element, the defendants offered grievance policies and procedures that were dated after the time period Mr. Winston has testified to filing his grievances, from June 6, 2012 to March 26, 2014, while he was an inmate at the jail. Is this a point that counsel raised in the district court for Mr. Winston? Your Honor, Mr. Winston was pro se in the district court, so counsel did not raise it. However, Mr. Winston did point out in his responses to the defendants' proposed findings of fact that the forms were different, they were a different color, and that he wasn't provided a carbon copy, which supposedly is provided to inmates under this new grievance procedures that the defendants offered. The grievance procedures offered by the defendants were dated October 2014 and November 2015. Those are well after the time period that Mr. Winston has testified to filing his grievances, and they on their face state that there were revisions. Mr. Winston pointed this out. The defendants also failed to establish the second element, that Mr. Winston failed to follow the policies and procedures. As an initial matter, the defendants left completely unrebutted Mr. Winston's sworn testimony in the record as to unavailability. And for that reason alone, there's an issue of a fact on the record and summary judgment was inappropriate. But if we look at the affidavit that the defendants offered from James Cox, the deputy inspector in the Internal Affairs Department for Milwaukee County, if you take a look at that affidavit, you'll see that it's plainly insufficient to establish what the defendants purport it does. First, Cox appears in paragraphs 10 through 13 that he looked in this electronic database during, quote, the relevant time period, end quote. Is it insufficient or does it create an issue of fact? Your Honor, this is insufficient because the defendants failed to lay the proper foundation to establish that Cox searched this database during a specific time frame, but additionally that Mr. Winston's grievance would have ended up in this database in the first place. There is absolutely no foundation in this affidavit to establish the process by which grievances get from the hands of inmates logged into this electronic database. Was that issue raised with the district court at the foundational challenge? Your Honor, no. This specific issue was not raised by Mr. Winston. However, at every point in the record where the issue of administrative exhaustion came up, Mr. Winston rebutted the defendants' evidence and noted that he testified that he did exhaust his administrative remedies when the defendants say that he failed to do so. Your Honors, if a hearing had been held in this case, like I said previously, Mr. Winston could have offered testimony from pod officers and cellmates, and based on that live testimony, the district court could have made a credibility determination. However, that hearing never happened here, and the district court dismissed this case on summary judgment in favor of the defendants for failure to exhaust administrative remedies. The issue of whether or not Mr. Winston failed to exhaust his administrative remedies was left completely unresolved. In fact, this court is in the same spot that the district court was at at the time it decided summary judgment because this issue is left unresolved. We have nothing in the record to establish when and whether Mr. Winston had access to writing materials, how he was able to submit these grievances, other than Mr. Winston's sworn testimony that he did, and the time periods that he has testified to submitting the grievances. You seem to be asking us in the papers as a remedy to strike the affirmative defense of failure to exhaust as opposed to sending it back for a pavey hearing. Is that what you're asking for, and do you have any legal support to do so? Because under your own argument, there's a question of fact. Yes, Your Honor, we are asking that this court strike the defendant's affirmative defense and remand this case for further proceedings on the merits. We're asking the court to do this because of the plain insufficiency of the defendant's evidence to prove their affirmative defense of failure to exhaust administrative remedies. It was the defendant's burden. This court has said that it's the burden of the defendants to establish their affirmative defense, and as I indicated to the court earlier, the defendants have failed completely to establish either of the elements they were required to do so to establish this affirmative defense. Therefore, this case should be reversed and remanded with instructions to strike the defendant's affirmative defense and to proceed on the merits. If we're in the same position that was the district court, why isn't there a question of fact for us as you've argued there was for the district court? Your Honor, there is a dispute of fact that exists here on the issue of administrative exhaustion, which did require a pavey hearing. However, there's no dispute that the defendant's evidence was insufficient and that Mr. Winston's evidence related to unavailability of the grievance procedures was left completely unrebutted in the record. My guess is the defendants made dispute the sufficiency of their evidence, but we'll see. I see that I'm entering my time for rebuttal. So unless the court has any further questions, I'd like to reserve the remaining time. Thank you, counsel. Thank you. Good morning, Your Honors, and may it please the court. I wanted to begin with the jurisdictional issue that was raised because we did not raise it in our brief due to what counsel just mentioned. At the time that Judge Stadmiller issued the decision, Mr. Winston was still incarcerated. However, he had a criminal appeal pending, and the criminal appeal has led to an order of a retrial. So it's our understanding that at this point in time and while this appeal has been pending, Mr. Winston is not incarcerated. However, at some point, I believe later this month, he will have a retrial on his prior conviction. So I think we can move forward here today, but I still have some question as to what the future may hold in terms of jurisdiction in this case. Turning to the merits of the appeal, I think one of the fundamental issues is whether, at least in this context, in the context of this case, holding a pavy hearing was discretionary. And we argue that it was. The difficulty I have is trying to figure out what more could Mr. Winston have possibly done? I don't think there's anything more that he could have done, and I think that was Judge Stadmiller's point, is that short of inventing new evidence at hearing. No, no, no. What more could he have done to show that he exhausted? Well, to start with, the record is, I mean, despite representations from counsel, the record is void of any declaration under oath saying, I filed these grievances against these corrections officers on these dates. What is in the record is. You have all these letters. Well, his letters are follow-ups, and he does swear to those, that I sent follow-up letters and I sent an open records request. And he does swear under oath that he did those things. And he explains that he doesn't have the carbon copy because at the time the forms didn't have the carbon copies. I'm just at a loss to try to think, what more could he have done? Again, Your Honor, he could have put into a sworn declaration that I submitted these grievances on this date against these officers. And I think, not unlike Roberts versus Neal. It's kind of functionally what he's done. Pardon? It's kind of functionally what he's done. But he hasn't. I mean, there's a distinction to be made between arguments made in briefs and the sworn testimony, the sworn declarations of Mr. Winston. And that's the disparity here, and I think that's what the trial court relied on, is that it's one thing in your briefs to say, hey, I did all of these things. But if there's not any evidence in the record that he's swearing under oath that this is what I did, there's a shortfall. And that's where I think this case is closer to Wagner, wherein Judge Stadmiller ruled there's really not a genuine, material, factual dispute. Yes, there's allegations made in the pleadings and in the briefs. But when you dig into the record itself and into the sworn testimony, Mr. Winston, just as was the case in Wagner, As for the record, though, you all haven't made a record as to what grievance policies were in place at the time that the grievances were filed. Sure. Well, again, it's our position that no grievances were filed. That was our point in filing the motion. Yeah, but don't you still have to provide the administrative framework for the context in which the grievances would have been received and considered? Sure. And here you point in the Cox Declaration to those that are in effect at the time the civil complaints filed, but not at the time the grievances filed. Sure. And if the court's seeking contrition, yes. If I had it all over to do again, would I have filed multiple different versions of policies? Certainly I would have to have erred on the side of caution. However, there were multiple policies that were applicable to this period of time that Mr. Winston was incarcerated. And we filed the policy that was in effect at the time that the lawsuit was filed, which our position is that's the time that the Prisoner Litigation Reform Act was violated. Up until the day before he filed the lawsuit, he could have exhausted his administrative remedies. And our position is he didn't file the grievances when he says he did in his briefs. If this would have been an issue of arguing whether the grievance was sufficient, but we knew, okay, he filed something at this particular date and time. Suppose a facility has an old and a new policy. The old policy is in effect at the time the inmate fills out the grievance and submits it. And the new one is in effect on the day the civil complaint is filed. And they differ in material ways. And the inmate complies to the letter with the old policy. Your position is that he's failed to exhaust because he hasn't complied with the new one? That's not my position at all, Your Honor. And that would be the case if there was actually a grievance that was filed at that time. No, no, no. In the hypothetical, I want you to assume a grievance was filed. Then I agree with your hypothetical. The distinction here is that there wasn't a grievance filed. Mr. Winston, in a sworn declaration, doesn't even say that a grievance was filed. So if you agree with my hypothetical, you agree that the policy in place at the time the hypothetical grievance was filed is what applies? No. In this case, I believe that multiple different policies could potentially apply. Certainly the policy that was in effect at the time that he filed the lawsuit, that policy certainly applied because that was the time, in our opinion, that he violated the Prisoner Litigation Reform Act. Has any court ever held that? No. I mean, I think this is a unique case. I mean, I think this case, as we look at the first of all, the concept of a payee hearing is unique to the Seventh Circuit. And I think when we look at the payee decisions from this court, there's not a whole lot of guidance. And I think this case, in particular, fits closer to Wagner than it does Roberts v. Neal or any of the other ones. Summary judgment, again, in this case, had been fully briefed by the time payee was first raised. And it was within the discretion of the trial court in that context and in that circumstance to take the issue and address it on the merits without having a hearing because he already had a full record. He had everything in front of him. Have grievances in the jail been a matter of public concern generally in newspaper stories and things like that? I think certainly it would be fair to say that jail operations have been a matter of public concern. I don't know the grievances in particular. And to that point, if we turn to the Cox affidavit a little bit, the affidavit itself is sufficient. In that affidavit, Cox explains his background as an inspector within the Internal Affairs Department, had worked for decades within the Milwaukee County Sheriff's Department. He, in the affidavit, indicates the dates of confinement that Mr. Winston was in the Milwaukee County Jail and then goes on to say that he looked through the inmate grievance database for the relevant time period and didn't see any grievances. Further, the policy, and I'll just represent to the court, the prior versions of policy have had no real material impact. The forms themselves have changed, and it is true that they do now have carbon copies when in the past they didn't. But this case does not present a scenario where Mr. Winston stood up in the district court and said, hey, wait a minute. The policy that applied back in 2013 is different in some sort of material way. Had he done that- We don't see very many cases in which the jail or the prison denies that they ever received any grievances. I think that's- This is an unusual case. I think that's right. I think it's a credit to the corrections institutions, the jails and the prisons, for keeping track of them. And they do have very good computer systems now. This has all become digitized where they're able to track things. And so, again, from the district court's position, when this matter has been fully briefed, Pavey wasn't raised until after summary judgment had been fully briefed and the case was ready for decision. In that context, for the district court to have made a decision that he found the defense position on exhaustion more credible, I think that's appropriate. And it doesn't- You said a moment ago that there was no material issue of fact here. Didn't the judge find there was a material dispute and then go on to make a credibility determination on the issue of the filing of grievances? And how can you do that at summary judgment? The judge ruled that there were disputes of fact. What I think is important is to really dive deeper into what's both material and what's genuine. I think particularly since this case was in a summary judgment posture, while the court didn't necessarily focus on it, Mr. Winston had submitted conflicting statements, conflicting declarations. But that's not what the judge based his decision on. How can you say the determination of whether or not Mr. Winston had exhausted his administrative remedies and the conflicting evidence from Mr. Winston and the defendants here is not a material issue? Because Mr. Winston, as was the case in Wagner, didn't truly put it at issue. He didn't say in a declaration, I filed a grievance against these officers and against this date. He certainly, multiple times, put into declarations, I sent follow-up letters, I sent open records requests. And it's your view that even viewing those facts in the light most favorable to him, an inference could not be drawn that he did not file those? Because that's what we have to do at summary judgment. Your Honor, this is where the summary judgment and exhaustion kind of conflict with each other. Or merge. Or merge. And I think that really gets to the standard on a Pavey hearing. Fundamentally, what Pavey held, as the Court knows, is that there's not a Seventh Amendment right to a jury trial on the issue of exhaustion. So we know that this matter is ultimately going to be decided by the trial judge anyways. And so I think what the trial judge here is saying is that short of inventing new evidence, there's nothing left that can convince me that you actually exhausted remedies. And I think that that's a fair assessment for a trial court to make once summary judgment has been fully briefed and the case is fully in front of them. But can a court make that determination without assessing credibility? To say there's nothing on the paper, the cold paper. There's nothing left that would convince me. How can a court decide that without hearing all the evidence and in particular being able to assess credibility? I think you're right. I think in a Pavey context, the court does have to assess credibility. The question is, in this case, does that actually require a hearing? District court judges decide cases all the time without oral arguments, without hearings. But assessing credibility? District judges do not assess credibility on the papers. That's correct. But here in the Pavey context, we know that there is no Seventh Amendment right to it. The judge is going to have to make the determination. But no Seventh Amendment right to a jury determined the issue does not mean there's no Seventh Amendment right to a hearing or to have a judge make appropriate credibility determinations. And again, the judge here determined that there was nothing else that could be done at a hearing to sway the judge's view on this. And with that, I'll respectfully submit the case and we ask the court to affirm. Thank you. Thank you, counsel. Your Honors, I have two points that I'd like to address. First, the standard of review here is not abuse of discretion. This case is distinguishable from Wagner in two key ways. First, in Wagner, the district court was still looking for the dispute. As the courts acknowledged here, the district court acknowledged a dispute of fact on the issue of administrative exhaustion, yet it made a credibility determination on the papers, said that Mr. Winston failed to rebut the defendant's evidence. He, quote, unconvincingly rebutted the defendant's evidence, and it dismissed the case. This case is distinguishable from Wagner in that way. Second, the district court in Wagner had- Yeah, I sent him in. That's what our moms do, right? That's what we are. Yes, Your Honor. This is a, quote, unquote, swearing contest. Mr. Winston, contrary to what the defendants have represented, swore several times in many declarations, one being the one he filed with his complaints, the other being the one he filed in support of his petition for a Pavey hearing, and the third being the declaration he filed in support of a writ of habeas corpus where he said, he testified, I filed grievances, I exhausted my administrative remedies, and I received no response. The defendants have said Mr. Winston didn't exhaust his administrative remedies. Mr. Winston has testified that he did. A hearing is required under Pavey v. Conley when there are competing declarations such as this. If Your Honors have no further questions. Thank you. Thank you. Thanks to both counsel on the cases taken under advisement.